UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 16-257(1) (DWF/TNL) |
| Plaintiff, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION |
| Sumalee Intarathong, | |
| Defendant. | |

This matter is before the Court upon Defendant Sumalee Intarathong's ("Defendant") objection (Doc. No. 939 ("Def. Obj.")) to Magistrate Judge Tony N. Leung's December 30, 2021 Report and Recommendation (Doc. No. 936 ("Report and Recommendation")) insofar as it recommends that Defendant's Motion to Suppress Statement from July 7, 2011 (Doc. No. 898 ("Motion 1")) and Motion to Suppress Statement from January 13, 2017 (Doc. No. 899 ("Motion 2")) (collectively "Motions") be denied.[1]

The Court has conducted a *de novo* review of the record, including a review of the arguments and all submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b). The factual background for the above-entitled matter is clearly and

---

[1] The Report and Recommendation followed two hearings and post-hearing briefing. (*See* Doc. Nos. 916, 926, 930-933.)

precisely set forth in the Report and Recommendation and is incorporated by reference for purposes of Defendant's objection.[2]

### 1.     July 7, 2011 Statements

In Motion 1, Defendant asked the Court to suppress "any confessions, or statements in the nature of confessions, and any evidence derived or discovered as a result of any confessions obtained" from July 7, 2011, "because her statements were made without the benefit of *Miranda*."[3]  (Motion 1 at 1.)  Magistrate Judge Leung specifically considered two statements Defendant made on July 7, 2011—one she made to HSI Special Agent Chan, and another she made to Supervisory Customs and Border

---

[2]     In brief, Defendant's Motion 1 stems from statements she made during interviews at the San Francisco International Airport prior to being admitted to the United States. Defendant's first interview was with Homeland Security Investigations ("HSI") SA Alex Chan ("HSI SA Chan").  Her second interview with SA Chan, was with Supervisory Customs and Border Patrol Officer Phillip Simoy ("Supervisory CBP Officer Simoy"). (*See* Report and Recommendation at 6-16.)

Defendant's Motion 2 stems from a statement she made to HSI agents and other individuals in Liège, Belgium after she was arrested there for alleged participation in a large-scale international sex-trafficking organization.  (*See id.* at 24-31.)

[3]     The Fifth Amendment requires that law enforcement inform a person of his or her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) before beginning a custodial interrogation.  *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007).  A defendant may waive his or her *Miranda* rights, provided that the defendant does so voluntarily, knowingly, and intelligently. *United States v. Gallardo,* 495 F.3d 982, 990 (8th Cir. 2007).  A waiver is made voluntarily only if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  Moreover, a waiver is made knowingly and intelligently only if the defendant has "'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Gallardo*, 495 F.3d at 990 (quoting *Moran,* 475 U.S. at 421).  The Court considers the totality of the circumstances in determining whether a waiver is valid.  *Id.*

Patrol Officer Phillip Simoy ("Supervisory CBP Officer Simoy"). (Report and Recommendation at 5-23.)

### A. HSI SA Chan

Defendant argued that her statement to HSI SA Chan must be suppressed because the Government violated her due process rights when it failed to provide testimony from HSI SA Chan, and that because there was no recording of Defendant's interview with HSI SA Chan and no sworn testimony that a *Miranda* warning was actually provided, the Government failed to meet its burden to establish that Defendant made a voluntary, knowing, and intelligent waiver of her *Miranda* rights prior to giving a statement to HSI SA Chan.[4]  (Doc. No. 931 ("Def. Memo 1.") at 2.)  Defending his admission of the Interview Report with appropriate law, Magistrate Judge Leung found that Defendant's due process and confrontation rights were not violated by the admission or by HSI SA Chan's absence from the hearing. (Report and Recommendation at 17-18.) He further concluded that the record showed that Defendant made a voluntary, knowing, and intelligent waiver of her *Miranda* rights prior to making her statement to HSI SA Chan

---

[4] Magistrate Judge Leung also acknowledged Defendant's challenge to the use of an Interview Report dated July 7, 2011 written by HSI SA Chan ("Interview Report")—which Magistrate Judge Leung admitted as evidence over Defendant's objection during a hearing held on October 7, 2021—as sufficient to establish that Defendant was properly *Mirandized* prior to her interview with HSI SA Chan (*see* Def. Memo. 1 at 1) but observed that Defendant herself conceded that HSI SA Chan provided her a *Miranda* warning prior to the interview. (Report and Recommendation at 16.) Noting other supporting evidence, Magistrate Judge Leung concluded that Defendant was properly *Mirandized* prior to giving her statement to HSI SA Chan. (*Id.*) Upon review of the totality of the record, including the Interview Report and corroborating testimony, this Court agrees with Magistrate Judge Leung's finding that Defendant was *Mirandized* prior to giving her custodial statement to HSI SA Chan.

3

and that the waiver was valid. (*Id.* at 18-20.) Magistrate Judge Leung therefore recommended that Defendant's Motion 1 be denied insofar as it seeks suppression of any statement made to HSI SA Chan on July 7, 2011. (*Id.* at 20.)

Defendant does not appear to object to Magistrate Judge Leung's recommendation with respect to the statements she made to SA Chan. (*See generally* Def. Obj.) The Court briefly notes, however, that it finds Magistrate Judge Leung's recommendation both factually and legally correct and finds no reason to depart from it. The Court specifically agrees with Magistrate Judge Leung that Defendant was properly *Mirandized*, and that the record reflects that she made a knowing and intelligent waiver of her *Miranda* rights prior to making any statement to HSI SA Chan and that the waiver was valid.

### B.   Supervisory CBP Officer Simoy

Defendant argued that her statement to Supervisory CBP Officer Simoy must be suppressed because he did not advise Defendant of her *Miranda* rights. (Def. Memo. 1 at 2-3.) In his Report and Recommendation, Magistrate Judge Leung detailed the evidence in the record, including extensive testimony of Supervisory CBP Officer Simoy.[5] (*Id.* at 6-16.) Magistrate Judge Leung concluded that because *Miranda* is not

---

[5] The Report and Recommendation specifically noted Supervisory CBP Officer Simoy's testimony that at the time he encountered Defendant, he was working in Passport Control Secondary Inspections ("Secondary Inspection"), an area of the airport that is outside of the United States. (Report and Recommendation at 7; *see also* Doc. No. 926 ("Hr'g Tr.") at 16:10-12.) Supervisory CBP Officer Simoy described Secondary Inspection as an area where individuals go to undergo further questioning about discrepancies in paperwork or to clarify their intent or purpose for coming to the United States. (Report and Recommendation at 7; *see also* Hr'g Tr. at 15:2-10; 62:18-21.) He

4

required during routine questioning at the border, a *Miranda* warning was not required. (*Id.* at 20-23.) He therefore denied Defendant's Motion 1 insofar as it sought suppression of her statement made to Supervisory CBP Officer Simoy. (*Id.* at 23.)

Defendant objects to the Report and Recommendation on the grounds that her statement to Supervisory CBP Officer Simoy must be suppressed "because she invoked her *Miranda* rights in the immediate hour before CBP Officer Simoy initiated her interrogation . . . [Supervisory CBP Officer Simoy] was aware that Defendant had invoked her rights" but "nevertheless he re-initiated an interrogation of Defendant." (Def. Obj. at 3-4.) Defendant contends that because she was clearly in custody at the time of her questioning, the Magistrate Judge's finding that a *Miranda* warning was not

---

also testified to his knowledge that Defendant had been flagged for Secondary Inspection by an HSI agent, and to his understanding that when HSI was involved at the border, it was typically to interview an individual potentially involved in criminal matters. (Report and Recommendation at 7; *see also* Hr'g Tr. at 16: 18-17:2) He further testified as to his understanding that Defendant's interview with HSI SA Chan concluded when she invoked her right not to answer more questions. (Report and Recommendation at 9; *see also* Hr'g Tr. at 26:14-17; 56:2-5.)

Supervisory CBP Officer Simoy was clear, though, that his responsibility was limited to determining Defendant's admissibility into the United States and that his administrative questioning would have taken place whether or not Defendant had been *Mirandized* in a previous interview. (Report and Recommendation at 10-11; *see also* Hr'g Tr. at 17:5-6; 63:7-8.) He further testified that he did not provide Defendant a *Miranda* warning prior to his interview because it was not required at the border when determining her admissibility, but that he did provider her an advisement and put her under oath. (Report and Recommendation at 11; *see also* Hr'g Tr. at 61:21-62:4.) Supervisory CBP Officer Simoy further testified he ultimately denied entry to Defendant because he determined "that there was a pattern" of individuals who had traveled with Defendant overstaying in the United States on their tourist visas." (Report and Recommendation at 14-15; *see also* Hr'g Tr. at 44:9-12, 18.) After informing Defendant that she was not admissible, Defendant was provided food, a bathroom break, and waited until the next flight back to Thailand. (Hr'g Tr. at 47:3-48:1.)

5

required prior to Supervisory CBP Officer Simoy's questioning is contrary to law.[6] (*Id.* at 4 (citing *Edwards v. Arizona*, 451 U.S. 477 (1981); *United States v. Oyekan*, 786 F.2d 832, 839, n.12 (8th Cir. 1986).)

After a careful review of Defendant's objection and *de novo* review of the record, the Court finds no reason to depart from the Magistrate Judge's recommendation not to suppress the statement Defendant made to Supervisory CBP Officer Simoy. The Court first observes that the Report and Recommendation correctly identifies that a *Miranda* warning is not required at the border when determining an individual's admissibility into the United States if that person has not been arrested or there is insufficient probable cause to believe that the person has committed an offense. *See, e.g.*, *United States v. Oyekan*, 786 F.2d 832, 839 n.12 (8th Cir. 1986) ("[T]he warnings required by *Miranda* need not be given to one detained at the border 'unless and until the questioning agents have probable cause to believe that the person questioned has committed an offense, or the person questioned has been arrested."); *see also United States v. Kiam*, 432 F.3d 524, 529-30 (3d Cir. 2006) (finding that *Miranda* is required at the border only when questions "objectively cease to have bearing on the grounds for admissibility and instead only further a criminal investigation").

---

[6] Defendant argues that Magistrate Judge Leung wrongly concluded that Supervisory CBP Officer Simoy's questioning was nothing more than routine when he asked a number of questions with respect to who the women were that Defendant was traveling with, what they did for work, and whether they had boyfriends in the United States. (Def. Obj. at 4-5.) She contends that these questions were clearly directed at determining whether Defendant was involved in trafficking the women she was traveling with. (*Id.* at 5.)

6

Over Defendant's objection, the Court finds that Defendant was not under arrest at the time of her interview, and similarly finds no basis to conclude that Supervisory CBP Officer Simoy had sufficient probable cause to believe that Defendant had committed any specific offense. The Court also agrees with the Magistrate Judge that Supervisory CBP Simoy's questions did not extend beyond the administrative purpose to determine whether Defendant was admissible to the United States.[7] Finding the Report and Recommendation both factually and legally correct with respect to Defendant's July 7, 2011 statements, the Court respectfully overrules Defendant's objection.

**2.      January 13, 2017 Statement**

In Motion 2, Defendant asked the Court to suppress "any confessions, or statements in the nature of confessions, and any evidence derived from or discovered as a result of any confessions obtained from [Defendant] on January 13, 2017, because her statements were made without a knowing and voluntary waiver of *Miranda* and in violation of her Sixth Amendment right to counsel." (Motion 2 at 1.)

---

[7]      While it is correct that Supervisory CBP Officer Simoy asked questions related to Defendant's travel companions, the Court finds these questions properly linked to the administrative purpose of determining whether Defendant was admissible to the United States. The record does not reflect that Supervisory CBP Officer Simoy asked Defendant any question concerning her involvement in any alleged crime. Ultimately, the questions he did ask shed light on the pattern that formed the basis for Defendant's denial of entry. Therefore, the Court finds that while the questions may have been tailored to Defendant's unique facts and circumstances, including who she was traveling with and why, the Court does not find any reason to depart from Magistrate Judge Leung's conclusion that the questions were routine insofar as their purpose was limited to determining whether Defendant was properly admissible to the United States.

As an initial matter, Defendant claimed that the *Miranda* warning given on January 13, 2017 was insufficient because it "was wrong in a material way," as it related to the French/English translation. (Doc. No. 930 at 2.) Defendant also claimed that any waiver of her *Miranda* rights was not voluntary when she was threatened with a very lengthy sentence unless she cooperated, and was made certain promises by the Government that were also contingent on her cooperation. (Motion 2 at 3-4.) She further argued that a waiver was not done knowingly "because there [was] no recording of the interrogation to determine whether her rights were accurately translated to Thai." (*Id.* at 4.) Defendant also argued that due to the nature of the interview, her right to counsel was violated when she was not provided an attorney.[8] (*Id.*) Finally, Defendant argued that her statements must be suppressed because she was not notified that she may have her consulate notified of the charges against her.[9] (*Id.* at 5.)

In his Report and Recommendation, Magistrate Judge Leung accurately recounted the evidence in the record, including extensive testimony of Special Agent Tonya Price ("SA Price"), who served as the lead investigator in the case and was one of eleven

---

[8]   Defendant later conceded that she did have an attorney present at her interview, but that the attorney on that date was not licensed to practice law in the United States. (Doc. No. 930 at 1.)

[9]   Defendant also asked the Court to suppress a subsequent letter she sent to the Government on March 20, 2017. (Motion 2 at 5.) Noting that Defendant did not mention the letter during the hearing or in her post-hearing briefing, Magistrate Judge Leung concluded that Defendant failed to provide sufficient support as to why the letter should be suppressed and denied her request.

people present during Defendant's January 13, 2017 interview.[10] (Report and Recommendation at 26-31.) Considering the record as a whole and noting that the interview was conducted abroad where *Miranda* may be applied in a flexible fashion to accommodate the exigencies of local conditions, Magistrate Judge Leung concluded that Defendant was given a proper *Miranda* warning and proper access to counsel while in custody in Liège, Belgium. (*Id.* at 33-35.) He observed that while Defendant's attorney was not licensed to practice in the United States, Defendant did have an attorney with her throughout the entirety of the interview, was told that she could speak privately with this attorney at any point during the interview, and that she exercised that right.[11] (*Id.* at 34; *see also id.* at 28 (describing private consultation with attorney).) Magistrate Judge

---

[10] SA Price testified that others at the interviews included two Assistant United States Attorneys, Defendant, Defendant's attorney, a Thai interpreter, an attorney-in-training, a Homeland Security Representative, and three Belgian investigators based in Liège. (Report and Recommendation at 26; *see also* Hr'g Tr. 70:19-20.) SA Price explained that she read Defendant her *Miranda* rights from her HSI credentials, the warning was translated from English into Thai by the Thai interpreter, and that Defendant stated that she understood those rights and still wished to provide a statement. (Report and Recommendation at 28; *see also* Hr'g Tr. at 71:18-23, 72:12-17, 73:23-74:3, 89:20-90:8, 92:3-5, 95:11-96:4.) SA Price further testified that Defendant was told that she could stop questioning at any point, that she could speak with her attorney at any point, and that she did not have to answer any particular question. (Report and Recommendation at 28; *see also* Hr'g Tr. at 73:2-9.) SA Price also stated that at one point, Defendant did take a break to speak privately with her attorney. (Report and Recommendation at 28; *see also* Hr'g Tr. at 73:10-12.) SA Price further explained that in addition to the oral *Miranda* warning Defendant was provided, Defendant was also received written copies in English and French of a declaration of rights commonly used in Europe. (Report and Recommendation at 29; *see also* Hr'g Tr. at 74:4-9.)

[11] Magistrate Judge Leung also noted that Defendant initialed and signed each page of her statement after reviewing it with her attorney, acknowledged the accuracy of its contents, and signed the last page. (Report and Recommendation at 34.)

Leung also noted that Defendant received both an oral warning from SA Price and a written European declaration of rights prior to giving her statement.[12] (*Id.* at 34.) He therefore concluded that "the warnings given to Defendant . . . were consistent with *Miranda* and accommodated the exigencies of the local conditions in Belgium with regard to Defendant's access to counsel. (*Id.* at 35.)

Magistrate Judge Leung also found that Defendant made a voluntary, knowing, and intelligent wavier of her *Miranda* rights. (*Id.* at 35-39.) Again, considering the totality of the evidence in the record, he found that Defendant's interview was not coercive, Defendant's *Miranda* warning was sufficient, Defendant understood the *Miranda* warning read to her both in English and in Thai, and that there was no credible evidence that Defendant was unable to understand her interpreter or that the interpreter did not properly translate what was said to Defendant in English.[13] (*Id.* at 38-39.) The Magistrate Judge therefore concluded that the Government had met its burden to prove, by the preponderance of the evidence, that Defendant voluntarily, knowingly, and

---

[12] Magistrate Judge Leung explained that the written European declaration of rights included the right to be assisted by counsel, the right to remain silent, and cautioned that any statement Defendant made could be used as evidence against her in court. (Report and Recommendation at 34.)

[13] Magistrate Judge Leung noted that the record is replete with evidence that Defendant understands English, including that she spoke in English when interviewed in 2011, reviewed and signed off on various statements in English, wrote a letter to the Government in English, had lived in the United Kingdom, informed authorities that she preferred to speak primarily in English during her interview on January 13, 2017 and appropriately answered questions in fluent English throughout that interview. (*Id.* at 38.) He further observed that Defendant also had the benefit of a Thai interpreter whom she never expressed complaints about. (*Id.* at 38-39.)

intelligently waived her *Miranda* rights when giving her statement on January 13, 2017 and that nothing in the record suggested that Defendant lacked full awareness of the nature of her rights and consequences of her decision to abandon those rights when she gave the statement. Accordingly, he recommended that Defendant's motion to suppress the statement she made on January 13, 2017 be denied.

Defendant objects to the Report and Recommendation on the grounds that Magistrate Judge Leung failed to address her claim that she was denied assistance of counsel. (Def. Obj. at 2-3.) The Court finds, though, that the Report and Recommendation does address this argument but rejects it as grounds to suppress Defendant's January 13, 2017 statement. Indeed, the Report and Recommendation clearly states that while Defendant's attorney was not licensed to practice in the United States, "Defendant did have an attorney with her throughout the entirety of the interview." (Report and Recommendation at 34.) Magistrate Judge Leung explained that "Defendant was told she could speak privately with this attorney at any point during the interview," and that "she exercised that right." (*Id.*) He further explained that Defendant initialed each page of her statement "after reviewing it with her attorney." (*Id.*) Magistrate Judge Leung therefore concluded that "the warnings given to Defendant . . . were consistent with *Miranda* and accommodated the exigencies of the local conditions in Belgium with regard to Defendant's access to counsel. (*Id.* at 35.)

The Court finds that the Magistrate Judge's analysis and conclusion with respect to Defendant's access to counsel during her July 13, 2017 interview are both factually

11

and legally correct.[14] The Court therefore finds no basis to depart from the recommendation to deny Defendant's motion to suppress the statement she made on January 13, 2017.

Based upon the *de novo* review of the record and all of the arguments and submissions of the parties and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

### ORDER

1. Defendant Sumalee Intarathong objection (Doc. No. [939]) to Magistrate Judge Tony N. Leung's December 30, 2021 Report and Recommendation are **OVERRULED**.

2. Magistrate Judge Tony N. Leung's December 30, 2021 Report and Recommendation (Doc. No. [936]) is **ADOPTED**.

3. Defendant's Motion to Suppress Statement from July 7, 2011 (Doc. No. [898]) is **DENIED**.

4. Defendant's Motion to Suppress Statement from January 13, 2017 (Doc. No. [899]) is **DENIED**.

Dated: March 1, 2022         s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge

---

[14] After a de novo review of the record, the Court similarly finds that the remaining findings in the Report in the Report and Recommendation, including the finding that Defendant made a voluntary knowing, and intelligent waiver of her *Miranda* with respect to her July 13, 2017 statement, are factually and legally correct and finds no reason to depart from them.