UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-257-01 (DWF/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SUMALEE INTARATHONG,
a/k/a Alice Spencer Warren,
a/k/a Alisa Spencer Warren,
a/k/a Emily Spencer Warren,
a/k/a Emily Alice Spencer Warren,
a/k/a Alisa Spencer,
a/k/a Sumalee Noibumrung,
a/k/a Teow,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant SUMALEE INTARATHONG, a/k/a Alice Spencer Warren and other aliases (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which charges the defendant with Conspiracy To Commit Sex Trafficking, in violation of Title 18, United States Code, Section 1594(c), and Count 6 of the Superseding Indictment, which charges the defendant with Conspiracy To Engage in Money Laundering, in violation of Title 18, United States Code, Section 1956(h). The defendant fully understands the nature and elements of the crimes with

1

which she has been charged. At the time of sentencing, the government agrees to move to dismiss the remaining counts of the Superseding Indictment against the defendant, including Count 2, Sex Trafficking by Use of Force, Fraud, and Coercion, in violation of Title 18, United States Code, Sections 1591(a), 1591(b)(1), and 1594(a), which carries a mandatory minimum sentence of imprisonment of 15 years.

2.   **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Count 1 and Count 6 of the Superseding Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

The defendant was part of a large-scale international sex trafficking organization. The organization conspired to make money between at least 2009 and 2017, by arranging for Thai women (the "victims") to travel from Thailand to the United States to engage in numerous commercial sex acts. The organization engaged in widespread visa fraud in order to transport the victims to the United States. Once in the United States, the victims would travel to various states, including Minnesota, to stay in "houses of prostitution" (apartments, houses and/or hotels) where they would be required to perform commercial sex acts. The victims performed these sex acts to work off a "bondage debt." When members of the conspiracy in Thailand recruited the victims, who were typically from impoverished backgrounds, the victims were required to enter into a contract to pay for their visas and travel to the United States. The bondage debt was typically between $40,000 and $60,000 and far

exceeded the actual expenses incurred by the trafficker. Until they paid off their bondage debt, the victims were effectively "owned" and controlled by the organization.

The defendant's involvement in the criminal conspiracy began in approximately 2009 and ended upon her removal from the United States in July 2011.

Prior to coming to the United States, the defendant studied and received degrees in industrial design and communications. The defendant's education took her to Vienna and London where the defendant developed the skills and experience to run a successful travel business named East Meets West or EMW Travel. The defendant also ran ESW Graphic Design Co. It was through connections in the United Kingdom that the defendant became involved with the sex trafficking organization.

While in Thailand, the defendant met with individuals—including a woman known as "M" and a man known as "Tu"—who requested her assistance in preparing visa applications for victims to enter the United Kingdom and later to the United States. "M" and "Tu" were the leaders of a large sex trafficking organization. At some point prior to preparing these visa applications, the defendant learned that the victims were entering the United States to engage in the commercial sex industry. The defendant learned that the victims were brought to the United States under bondage debts of $40,000 to $60,000. The defendant also learned that the organization sent the women to have "sexy photos" taken in Bangkok to be used in advertisements in the United States. The defendant prepared false and fraudulent visa applications for victims of the organization to enter the United States.

From 2009 through 2011, the defendant prepared visa applications for "M" and "Tu." This included a B1/B2 visitor visa for co-defendant Chabaprai Boonluea (a/k/a "Chaba"), whom the organization trafficked to the United States to engage in commercial sex. In 2009, the defendant entered the United States in San Francisco on a B1/B2 visitor visa with Chaba, Chaba's "husband"—a fraudulent marriage arranged by the trafficking organization—and the Thai trafficker known as "Tu." The defendant prepared fraudulent visa applications for additional women trafficked by the criminal organization, including Khanong Intharathong, Nattha Sawetthawon, Panumat Ananayonnawin, and Rungrudee Tan. The defendant prepared these fraudulent visa applications with the knowledge that the victims were under bondage debts to the organization of between $40,000 and $60,000, and that the victims would be forced to engage in commercial sex acts until the bondage debt was repaid. The defendant learned that the organization used threats to ensure the victims paid their debts owed to the organization, including threats made against victim Nattha Sawetthawon. The purpose of the threats against Nattha was to make sure that she continued to engage in commercial sex acts for the benefit of the organization instead of returning home to Thailand.

In early 2011, the defendant again prepared B1/B2 visa applications for Thai women. The defendant met with the women at Robinson Department Store in Bangkok, prepared their fraudulent visa applications by making them directors of companies, and created a false travel itinerary. The defendant entered the United States in San Francisco on July 7, 2011, with four women who were recruited to

4

engage in commercial sex acts for the organization. The defendant had assisted one of the women with travel before to the United Kingdom to engage in commercial sex acts. After an interview with Customs and Border Protection, the defendant was found to be inadmissible. She was returned to Thailand and barred from return to the United States for a period of at least five years. After that, the defendant continued to assist other traffickers in Thailand, including a trafficker named "Odd," with recruiting and preparing fraudulent visa applications for women to engage in commercial sex acts in the United States and later Belgium. For her services, the defendant received money.

The defendant principally served as a visa application broker for the organization. At one point, law enforcement thought the defendant was "M," one of the higher-up traffickers—or "big bosses"—in Thailand. Law enforcement learned that the defendant is *not* the "big boss" known as "M." (The defendant may at times be referred to as the similar nickname of "Em," short for her alias of Emily.)

The defendant also admits the organization engaged in the money laundering conspiracy by moving the illegal proceeds of the criminal organization from the United States to Thailand and directing the victims to do so. The defendant knew that the money the victims earned from the prostitution activity was then deposited into accounts held by money launderers within the criminal organization. The defendant knew the money launderers sent a portion of the profits made back to Thailand and used sophisticated means to ensure the proceeds of the sex trafficking organization reached co-conspirators in Thailand. While the defendant did not

5

engage in any sophisticated means herself, the defendant admits that the transactions were designed in whole and in part to conceal or disguise the nature, source, ownership and control of the proceeds of the specified unlawful activity.

The defendant knowingly and voluntarily participated in the criminal conspiracy to traffic Thai women for commercial sex and the conspiracy to engage in money laundering.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file additional pre-trial motions in this case and hereby withdraws any that she has previously filed.

4. **Statutory Penalties**. The defendant understands that Count 1 of the Superseding Indictment (Conspiracy To Commit Sex Trafficking, in violation of Title 18, United States Code, Section 1594(c)) carries the following maximum statutory penalties:

    a. a maximum of life imprisonment;

    b. a supervised release term of at least 5 years up to life;

    c. a maximum fine of $250,000;

    d. $5,000 to the Domestic Trafficking Victims' Fund;

    e. mandatory restitution in an amount to be determined by the Court; and

    f. a mandatory special assessment of $100.

The defendant understands that Count 6 of the Superseding Indictment (Conspiracy To Engage in Money Laundering, in violation of Title 18, United States Code, Section 1956(h)) carries the following maximum statutory penalties:

    a.    a maximum of 20 years in prison;

    b.    a maximum supervised release term of 3 years;

    c.    a maximum fine of $500,000 or twice the value of the property involved in the transaction, whichever is greater;

    d.    restitution in an amount to be determined by the Court; and

    e.    a mandatory special assessment of $100.

5.    **Revocation of Supervised Release.** The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

6.    **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations:

### COUNT 1: Conspiracy To Commit Sex Trafficking

a. <u>Base Offense Level</u>. The defendant agrees there were at least six victims of the sex trafficking conspiracy. As to each victim, the parties agree that the base offense level is **34**. U.S.S.G. §§ 1B1.2(d), 2G1.1(a)(1), 2G1.1(d)(1), and 2X1.1(a).

b. <u>Specific Offense Characteristics</u>. The parties agree that no specific offense characteristics apply.

c. <u>Chapter 3 Adjustments</u>. The parties agree that the offense level should be increased by **2** levels as the defendant knew or should have known that a victim of the offense was a vulnerable victim. U.S.S.G. § 3A1.1(b)(1). The parties agree that other than acceptance of responsibility, no other Chapter 3 adjustments apply.

*[handwritten: GDw R. 11/29/22]*

### COUNT 4: Conspiracy To Commit Money Laundering

a. <u>Guidelines Range</u>. The parties agree that the base offense level is **34**, which is the offense level for the underlying offense the defendant committed from which the laundered funds were derived. U.S.S.G. §§ 2S1.1(a)(1) and 2X1.1(c).

b. <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by **2** levels because the defendant was convicted under Title 18, United States Code, Section 1956. U.S.S.G. § 2S1.1(b)(2)(B). While the parties acknowledge that the offense involved sophisticated laundering under U.S.S.G. § 2S1.1(b)(3), the parties agree the **2**-level enhancement should not be applied to the defendant because her role in the laundering was not sophisticated or directly tied to the sophisticated laundering means. The parties agree that no other specific offense characteristics apply.

c. <u>Chapter 3 Adjustments</u>. The parties agree that other than acceptance of responsibility, no other Chapter 3 adjustments apply to this Count.

### Grouping and Other Guidelines Considerations

d. <u>Grouping</u>. Count 6 is grouped with Count 1 pursuant to U.S.S.G. § 3D1.2(c). Because there were at least six victims in Count 1

        with conduct equally as serious, a 5-level increase applies. U.S.S.G. § 3D1.4. The resulting offense level is **41**.

   e.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a **2-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **1-level** reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing. The adjusted offense level is **38**.

   f.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **I**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

   g.    <u>Guidelines Range</u>. If the adjusted offense level is **38**, and the criminal history category is **I**, the Sentencing Guidelines range is **235** to **293** months of imprisonment.

   h.    <u>Fine Range</u>. If the adjusted offense level is **38**, the Sentencing Guidelines fine range is $50,000 to $1,000,000. U.S.S.G. § 5E1.2.

      i.    <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least five years up to lifetime supervision. U.S.S.G. § 5D1.2(c).

7.    **Sentencing Recommendation and Departures**. The United States brought criminal charges against the defendant in a criminal complaint dated July 29, 2016. The defendant was taken into custody in August 2016 in Liege, Belgium based on this criminal complaint. (The defendant had a pending case in Belgium at the time, but was effectively on house arrest. Her custody was triggered by the United States' complaint.) The defendant was indicted in September 2016 and the government sought her extradition. The defendant was formally extradited to the United States and had her first appearance in the District of Minnesota on February 16, 2021. The defendant has remained detained at the Sherburne County Jail since that date.

The parties understand that the period of time served in custody in Belgium from August 2016 through the defendant's initial appearance in February 2021 will not be credited by the Bureau of Prisons. The defendant will request that this Court reduce the defendant's sentence to reflect the time that the defendant spent in custody in Belgium (approximately 4 ½ years) that the defendant was in custody in Belgium on the government's complaint. The government defers to the Court as to this request.

Given the sentences that have been issued in this case and the companion case, *United States v. Morris*, 17-cr-107 (DWF/TNL), as well as additional factors, the United States intends to ask that the defendant be sentenced to 120 months'

10

imprisonment. The defendant retains the right to argue for any sentence that she believes is sufficient but no greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a). The parties reserve the right to make a motion for departures and/or variances from the applicable Guidelines range and to oppose any such motion made by the opposing party.

8.   **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.   **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees that the $200 special assessment is due and payable at the time of sentencing.

10.  **Restitution and Disclosure of Assets**. The defendant understands and agrees that 18 U.S.C. § 1593 applies and shall be enforced in accordance with 18 U.S.C. § 3664 in the same manner as an order under 18 U.S.C. § 3663A. The defendant further understands and agrees that the Court is required to order the

11

defendant to pay restitution, the full amount of her victims' losses, to the victims of her crimes. The defendant agrees not to oppose the Court's entry of an order that she pay restitution to the United States. The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, forfeiture and fines ordered by the Court. The defendant agrees to complete a financial statement fully and truthfully within 30 days after executing this agreement.

11.     **Forfeiture.** The defendant agrees to forfeit to the United States all property, real or personal, involved in, used or intended to be used to commit or facilitate the commission of Count 1 of the Superseding Indictment, and any property constituting or derived from any proceeds obtained, directly or indirectly, as a result of that offense. The defendant also agrees to forfeit any property, real or personal, involved in the commission of Count 6 of the Superseding Indictment and any property traceable thereto. The defendant agrees to forfeit and abandon a Samsung Galaxy cell phone that was seized in Belgium as part of their sex trafficking case and provided to law enforcement in the United States.

The defendant consents to entry of a money judgment forfeiture in the amount of $500,000, and agrees that the proceeds obtained, directly or indirectly, and her interest in the property involved in Count 1 of the Superseding Indictment equals or exceeds that amount. The defendant also agrees that the amount of money involved

in money laundering activities in furtherance of Count 6 of the Superseding Indictment equals or exceeds $500,000.

The government reserves its right to seek the direct forfeiture of additional specific assets and substitute property pursuant to 21 U.S.C. § 853(p).

The defendant waives any defenses or challenges to this forfeiture sanction arising under the Constitution or Fed. R. Crim. P. 32.2 and agrees that she will not contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. The defendant also waives her right to file a petition in any ancillary proceeding for property forfeited from any other defendant in this matter.

12. **Waiver of Trial Right**. The defendant understands that she has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial. The defendant understands that by pleading guilty she surrenders this right.

13. **Waivers of Appeal and Collateral Attack**. The defendant understands that 18 U.S.C. § 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights conferred by 18 U.S.C. § 3742 but retains the right to appeal the substantive reasonableness of a sentence greater than 120 months of imprisonment. In addition, the defendant expressly waives the right to petition under 28 U.S.C. § 2255. However, the waivers noted above shall not apply to a post-conviction collateral

attack or direct appeal based on a claim of ineffective assistance of counsel. The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

14. **Waiver of Venue.** Recognizing that the criminal conduct in this case occurred in the State and District of Minnesota, as well as in various other states and districts in the United States, and in the country of Thailand, the defendant waives all rights to challenge venue in the State and District of Minnesota.

15. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552 and 552A.

16. **Collateral Consequences**. The defendant understands that pleading guilty may have consequences with respect to her immigration status, including removal or deportation. The defendant understands that no one, including her attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of her conviction on her immigration status. Regardless of any immigration consequences that may follow from her guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

17. **Judicial Order of Removal.** The defendant and the United States jointly request that the Court, after imposing a sentence, order the defendant be

removed from the United States to Thailand, Belgium, or to any other country according to the applicable laws and regulations of the United States, so that promptly upon the defendant's satisfaction of her federal sentence, United States Immigration and Customs Enforcement may execute the order of removal according to the applicable laws and regulations. The defendant agrees that she is removable under the immigration laws of the United States and waives the right to notice and a hearing prior to deportation. The defendant further agrees pursuant to 8 U.S.C. §§ 1228(c)(5) and 1227 to enter into and agree to a stipulated request for judicial removal seeking a judicial order of removal from the United States.

18.   **Sex Offender Registration**.   The defendant understands that by pleading guilty, she may be required to register as a sex offender upon her release from prison as a condition of her supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, she may be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout her life.

19. **Complete Agreement**. This, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: November 29 2022

BY: LAURA M. PROVINZINO
MELINDA A. WILLIAMS
Assistant United States Attorneys

Date: November 29 2022

ALICE SPENCER WARREN
Defendant

Date: November 29 2022

AARON MORRISON, Esq.
Counsel for Defendant

16